UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

WILLIAM HART, JR.,

                         Plaintiff,              09 Civ. 5159

    -against-                            OPINION

NEW YORK UNIVERSITY HOSPITALS CENTER,

                        Defendant.

----------------------------------------X

A P P E A R A N C E S :

       Pro Se

       William Hart, Jr.
       2410 8th Avenue, Apt. #12A
       New York, NY  10027

       Attorneys for Defendant

       NYU LANGONE MEDICAL CENTER, OFFICE OF LEGAL COUNSEL
       One Park Avenue, 16th Floor
       New York, NY  10016
       By:  Daniel T. Driesen, Esq.

**Sweet, D.J.**

Defendant, NYU Hospitals Center ("NYUHC" or the "Defendant") (s/h/a New York University Hospitals Center), has moved pursuant to Rule 56 of the Federal Rules of Civil Procedure for a summary judgment motion to dismiss the complaint brought by plaintiff pro se, William Hart ("Hart" or the "Plaintiff"). Upon the findings and conclusions set forth below, the motion is granted, and the complaint is dismissed.

## Prior Proceedings

Hart filed his complaint on June 3, 2009 alleging discrimination, retaliation and denial of reasonable accommodation.

NYUHC moved to dismiss Hart's claims previously adjudicated by the New York State Division of Human Rights ("NYSDHR") which motion was granted in an opinion of February 9, 2010 (the "February 9 Opinion"), leaving as Hart's surviving claim that he was denied a reasonable accommodation and terminated on or about April 22, 2008 in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 12112, et seq., New York State Human Rights Law ("NYSHRL"), N.Y.

1

Exec. L. § 296, et seq., and New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-107 et seq.

The instant motion was marked fully submitted on June 15, 2011.

**The Facts**

The facts are set forth in Defendant's Statement of Material Facts pursuant to Rule 56.1 of the Local Rules of Civil Procedure, the various affidavits sworn to May 18, 2011 and May 19, 2011 that Plaintiff submitted in support of his Opposition, the Plaintiff's Statement of Material Fact and Plaintiff's Opposition of Motion for Summary Motion.  The facts are not in dispute except as noted below.

Hart began his employment with NYUHC on December 23, 1989 as a Building Service Attendant.  Over the course of his employment, Hart was subjected to disciplinary actions on more than forty occasions which Hart has asserted were harassment and the result of bogus disciplinary write-ups.  These disciplinary actions included five suspensions, two of which were for insubordination and one for threatening a supervisor which Hart has asserted were unjustified and the result of false

2

accusations.  Hart's performance evaluations frequently found him to be a sub-standard employee.  In the last evaluation of his performance, issued March 2006, Plaintiff was given a "1," the lowest rating, which signified that his performance failed to meet normal expectations and job requirements.  Hart has asserted that the evaluator was not part of management.

As an incident of his employment, Hart was part of a collective bargaining unit represented by Local 1199, SEIU United Healthcare Workers East.  In addition to the Defendant's policies, the terms and conditions of Plaintiff's position are governed by the collective bargaining agreement in place between the Defendant and the Local 1199, SEIU.  Pursuant to the collective bargaining agreement, vacant positions must be posted and made available to qualified employees in the bargaining unit.  To be qualified for a lateral transfer to a non-promotional position, an employee must have a satisfactory work record.  Similarly, the Defendant's policy requires that, to be eligible, an employee applying for a vacant position must have "a satisfactory record of performance, attendance and punctuality."

In early 2007, Plaintiff applied for three job postings within the Building Services Department that would have

3

been lateral transfers from his Building Service Attendant
position.  Two of the positions for which Plaintiff applied in
January 2007 were runner positions on the day shift.  Hart chose
to withdraw his application for both of these positions.  During
the posting period from February 13, 2007 to February 20, 2007,
Plaintiff also applied for a Temporary Elevator Operator
position on the night shift.  Hart has asserted the position was
labeled a full-time position at the time of his application.
Due to his suspension on February 5, 2007, Hart was passed over
for consideration of this position.  Hart has asserted the
suspension was unjustified because he was under a doctor's care
as a result of a job-related injury from July 19, 2001.  After
rejecting Hart's application, the Department ultimately decided
not to utilize the temporary position that was posted and
instead covered the work using extra hours from other employees.

On February 21, 2007, Hart left work on an approved
medical leave of absence due to a preexisting injury that was
covered by Workers' Compensation and was continuously out of
work from February 21, 2007, until his termination on April 22,
2008.  On September 5, 2007, while still out on Workers'
Compensation leave, Plaintiff filed a complaint against the
Defendant (named therein as New York University Medical Center)
with the NYSDHR alleging employment discrimination based on

4

disability, race and retaliation, alleging, inter alia, unfair
work assignments, job positions, vacations and personal days.
Id.  On February 19, 2008, the NYSDHR issued a Determination and
Order after Investigation dismissing the NYSDHR complaint and
dually-filed EEOC Charge and dismissed Plaintiff's
discrimination and retaliation claims, finding that there was no
probable cause to believe that Defendant had engaged in or was
engaging in the alleged unlawful discriminatory processes.  On
April 15, 2008, the EEOC issued a Dismissal and Notice of Rights
wherein it adopted the findings of the NYSDHR.

        While out on his Workers' Compensation Medical Leave,
Hart participated in a basketball referee training program at
the Kips' Bay Boys Club in the Bronx.  Peter Aguilar, Senior
Administrative Director of the Hospital's Building Services
Department ("Aguilar") was assisting in the running of the
program.  In early April 2008, Aguilar observed Hart at the
tryouts sprinting laterally with sudden stops and starts,
repeatedly thrusting his arms in the air, and performing other
strenuous physical actions that are required of basketball
officials.  Hart has asserted that at the Kips' Bay Boys Club,
while in the stands, he observed Aguilar.  Aguilar has asserted
that he approached Hart after the session and noted to Hart that
he appeared to be feeling better and that Hart responded that he

had to make sure his family eats and that this was not the place, but one day they would talk about it.  Hart has asserted that there was nothing stated about his health or his family.

On April 22, 2008, Hart appeared at the administrative office of the Building Services Department and sought to meet with Aguilar.  At the meeting, Hart requested to be returned to work and be given the Elevator Operator position on the night shift.  Hart admitted that his inquiry was for the position that he previously applied for and was denied in February 2007 and that he did not know whether or not the position he inquired about was vacant on April 22, 2008.  Aguilar informed Plaintiff that there were no vacant night escort positions, adding that even if a vacant position existed, Plaintiff was not eligible for a transfer given his performance and disciplinary history prior to going on medical leave.  According to Aguilar, Hart also said he did not have medical clearance to return to work from his leave.  Hart states that the NYUHC never asked for medical clearance.  According to Aguilar, Hart became loud and belligerent, and Aguilar and other witnesses have stated that Hart threatened Aguilar, warning "you better not come to Harlem," and shouting, "I know where you be at in Harlem and where you live in Mount Vernon!"  According to Aguilar, when asked what Hart meant, Hart responded "you'll see."  Hart states

6

that he told Aguilar he would see Aguilar in Mt. Vernon because
his first referee training session was scheduled to be held in
Mt. Vernon that Saturday.  Hart also alleges that, in this
conversation, it was Aguilar who responded with anger and
profanity, prompting Hart to ask if he was being treated in such
a manner because he was black.  According to Hart, Aguilar was
threatening and directed Hart to leave.

        According to Aguilar, while leaving, Hart continued to
curse and threaten Aguilar.  Hart testified that he, not
Aguilar, raised the issue of race in the meeting and that
Aguilar never said anything about Plaintiff being black.  Hart
also testified that Aguilar never discussed Plaintiff's
disability, nor could Hart recall if he said anything about his
disability and that he, not Aguilar, spoke of his prior
complaint to the NYSDHR.  Hart speculated that he believed
Aguilar was offended both because Plaintiff was taking the same
referee classes and because Hart told Aguilar about the night
elevator position and the NYSDHR claim.  Hart testified that at
this meeting, Aguilar stated that "your job is here if you want
it."  On April 22, 2008, Aguilar terminated Plaintiff's
employment based on his conduct at the meeting.  Hart has
asserted this to be untrue.

Hart was not the first employee Aguilar terminated at the hospital, and others he has discharged have been disabled and not disabled, male and female, and were a variety of races and ethnicities. Aguilar currently employs people who are disabled; people who have returned from medical and workers' compensation leaves; and people who have made allegations of discrimination and retaliation against the Medical Center to the NYSDHR.

On or about August 12, 2008, Plaintiff filed a new charge of discrimination with the EEOC. In addition to allegations that had been raised in his previously dismissed EEOC and NYSDHR charges, Hart alleged that he was unlawfully discharged based on his disability and retaliation. Hart's EEOC charge does not allege that his race was a cause of discrimination. According to Hart, the charge, by claiming disability and retaliation, included discrimination. On March 31, 2009, the EEOC issued a dismissal and notice of rights finding that it was unable to conclude that the statutes had been violated and notified Plaintiff of his right to file suit in federal court within 90 days.

After his termination, Hart alleges that he looked for other employment. However, Hart could not identify any jobs

8

that he did not pursue because of alleged limitations caused by his purported disability.  According to Hart, his college eligibility was rejected as a result of his termination.

## The Discrimination Claim Is Dismissed

This Court has previously held that, "[a]s a general rule, Title VII claims may only be maintained in federal court if they are raised in, or reasonably related to, the allegations brought before the EEOC or equivalent state agency." Buckvar v. City of New York, No. 98 CIV. 3106(RWS), 2000 WL 274195, at *5 (S.D.N.Y. Mar. 13, 2000).  If a claim is omitted from an EEOC charge and does not involve the same type of discrimination as that which was submitted for investigation, the omitted claim must be dismissed.  See id.; White v. N.Y.C. Dept. of Educ., No. 05-CV-2064(RRM)(LB), 2008 WL 4507614, at *3 (E.D.N.Y. Sept. 30, 2008) (granting summary judgment on claims of gender discrimination where only race discrimination was raised in the EEOC complaint); Scott v. N.Y.C. Dept. of Corr., No. 04 Civ. 9638(SHS)(GWG), 2007 WL 4178405, at *7 (S.D.N.Y. Nov. 26, 2007). Such an omission, when not reasonably related to the specific allegation actually included in the charge, will be the basis for dismissal for failure to exhaust.  Bethea v. Potter, No. 08 Civ. 2789, 2010 WL 423105, at *7 (S.D.N.Y. Feb. 5, 2010).

9

On the face of his EEOC charge, Hart only checked the boxes for "retaliation" and "disability" in the section labeled "Cause of Discrimination Based on."  Plaintiff's type-written attachment to the charge only references claims arising under the ADA regarding retaliation, reasonable accommodation and disability.  Despite acknowledging that the motion to dismiss successfully eliminated all claims other than those arising from the April 2008 meeting with Aguilar, Hart devoted much of his Opposition to challenging his numerous suspensions and previously adjudicated claims.  Where Hart addressed the issues of the April 2008 meeting, he fails to proffer evidence from which a jury could conclude that the stated reason for termination was pretextual and the real reason was discrimination or retaliation.  See Fitzpatrick v. The New York Cornell Hosp., No. 00 Civ. 8594 LAP, 2003 WL 102853, at *8 (S.D.N.Y. Jan. 9, 2003).  He concludes simply that the meeting itself establishes discrimination.  Although Hart states in ¶ 50 of his affidavit that his EEOC charge "does claim race as one of the possible causes of discrimination," he provided no factual evidence to support this claim.  The charge was an exhibit to the Driesen Affidavit, see Ex. 6, and, on its face, the charge and attachment signed by Hart bears no mention of race as a basis for the alleged discriminatory conduct.  Plaintiff cannot

avoid summary judgment with mere conjecture and surmise, Del Franco v. N.Y.C. Off-Track Betting Corp., 245 Fed. Appx. 42, 43 (2d Cir. 2007). See also White, 2008 WL 4507614, at *2. The discrimination claim is dismissed.


**The Accommodation Claim Is Dismissed**


To make a prima facie case for denial of a reasonable accommodation, a plaintiff must show that he was disabled, qualified for his position, and that the accommodation requested was reasonable. McBride v. BIC Consumer Prods. Mfg. Co., Inc., 583 F.3d 92, 97-98 (2d Cir. 2009).


In order to prove disability, a plaintiff must show that he possessed a physical or mental impairment that substantially limited one or more major life activities. 42 U.S.C. § 12102(1)(A). Merely having an impairment, however, does not necessarily make one disabled for purposed of the ADA. Wega v. Ctr. for Disability Rts., 395 Fed. Appx. 782, 784 (2d Cir. 2010) (quoting Toyota Motor Mfg. v. Williams, 534 U.S. 184, 195, 122 S. Ct. 681, 151 L. Ed.2d 615 (2002)). In this case, Hart was out on a workers' compensation leave when he met with Aguilar on April 22, 2008. Shortly before that date, however, Aguilar observed Hart engaged in physical activity

11

while participating in a referee training program, undermining

any claim that Hart was, in fact, disabled.  Moreover, Hart

provided no evidence attesting to his being disabled at the time

of his termination.  Plaintiff provided a doctor's note from one

year before the termination and a social security application

from two years after.  These documents do not satisfy Hart's

burden of demonstrating that he was disabled at the time of his

termination.


        If a plaintiff demonstrated that he was disabled under

the applicable statutes, he must also establish that the request

for a transfer as accommodation was reasonable and that a

suitable vacancy existed at the time the request was made.

Jackan v. New York State Dep't of Lab., 205 F.3d 562, 567 (2d

Cir. 2000); Batlidze v. Harris Beach L.L.P., No. 05 Civ.

86(DLC), 2008 WL 2009385, at *4 (S.D.N.Y. May 8, 2008).  The

burden of production and persuasion both lie with the Plaintiff

for this element of the claim.  Jackan, 205 F.3d at 567-68.

Here, Hart testified that the position he sought as a reasonable

accommodation, night elevator operator, was not posted at the

time he met with Aguilar on April 22, 2008 but was the position

for which he applied and was denied 14 months earlier.  Hart

asserted in his Opposition to Summary Judgment that the position

was not labeled "temporary" and that Defendant's exhibit was

12

"doctored." This assertion is not supported by relevant
evidence, or more importantly, is this contention relevant to
the issue of whether the position was vacant when requested in
April 2008. See Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11-12
(2d Cir. 1986) (the existence of disputed facts that are
immaterial to the issues at hand is not an impediment to summary
judgment).

Finally, Hart must demonstrate that the position
sought must be one for which he was qualified. McBride, 583
F.3d at 98. Qualifications include "the requisite skill,
experience and other job-related requirements of the employment
position." Id., quoting 29 C.F.R. § 1630.2(m). Both the
applicable collective bargaining agreement and hospital policy
require that a prospective applicant for a vacant position have
a satisfactory record in order to be considered. Hart conceded
that possessing a satisfactory work record is a prerequisite for
transfer under the union contract and hospital policies, but he
conclusorily states that Defendant would falsify accusations to
prevent him from transfer. Such conjecture, however, cannot be
relied upon in deciding this motion. See Bickerstaff v. Vassar
College, 196 F.3d 435, 439 (2d Cir. 1999) ("Statements that are
devoid of any specifics, but replete with conclusions, are
insufficient to defeat a properly supported motion for summary

13

judgment").  Thus, even if the position sought by Hart was
vacant (which it was not), his history of disciplinary problems
and performance deficits immediately prior to his medical leave
in February 2007 would render him ineligible for transfer.
Accordingly, Plaintiff cannot satisfy the requirements for a
reasonable accommodation under the ADA.  See Jackan, 205 F.3d at
567-68 (plaintiff must show that he was qualified for the vacant
position sought as a reasonable accommodation).

        For these reasons, summary judgment is granted
dismissing the causes of action concerning the alleged failure
to provide a reasonable accommodation.


**The Claim Of Discrimination And Retaliation Is Dismissed**

        Title VII and the ADA prohibit discriminatory
employment practices based on race and disability, respectively.
42 U.S.C. §§ 2000e, et seq.; 42 U.S.C. §§ 12112, et seq.  In the
absence of direct evidence, courts apply the three-tier burden-
shifting framework established in McDonnell Douglas Corp. v.
Green, 411 U.S. 792, 793, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973),
and Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-
53, 101 S. Ct. 1089, 67 L.Ed.2d 207 (1981), to determine if a
plaintiff has met his burden of proving employment

                              14

discrimination.  See Brown v. Pension Boards, United Church of
Christ, 488 F. Supp. 2d 395, 405 (S.D.N.Y. 2007).  In this
framework, the plaintiff has the initial burden to establish a
prima facie case of discrimination and, if the defendant
articulates a legitimate, nondiscriminatory reason for the
adverse employment action, the burden shifts back to the
plaintiff to prove that defendant's reason is in fact a pretext
for discrimination.  Id.  "The question for the court on summary
judgment is whether the plaintiff's evidence, taken as a whole,
establishes a substantial likelihood that the employer
intentionally discriminated against the plaintiff."  Id. at 405.
Likewise, federal retaliation claims and claims for
discrimination and retaliation under the Human Rights Laws of
New York City and New York State are evaluated using the same
analytical framework.  Auguste v. N.Y. Presbyterian Medical
Ctr., 593 F. Supp. 2d 659, 665-6 (S.D.N.Y. 2009); Faria v.
Instructional Sys., Inc., 259 F.3d 91, 98 (2d Cir. 2001).


          The first step of the three-part burden shifting
analysis is that a plaintiff must satisfy his prima facie burden
of proving discrimination by a preponderance of the evidence.
McDonnell Douglas, 411 U.S. at 802-04.  With respect to the
claims of discriminatory discharge based on disability, a
plaintiff must demonstrate with evidence in the record that he

15

was:  (1) disabled under the statute; (2) performing his job satisfactorily; (3) was discharged; and (4) the discharge took place under circumstances that give rise to an inference of discrimination.  Id.; Auguste, 593 F. Supp. 2d at 663-64.

Hart has failed to submit evidence that NYUHC's decision to terminate his employment for insubordination and threatening the senior administrative director was in any way related to his disability or race.  To establish a prima facie case of discriminatory discharge, a plaintiff must show that he was terminated "under circumstances giving rise to an inference of discrimination." Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 52 (2d Cir. 1998).  To do so, a plaintiff must "produce direct or circumstantial evidence that would lead a 'reasonable fact-finder to conclude either . . . that [the Hospital terminated his employment] because of his [race and/or disability], or [that the Hospital considered his race and/or disability] as a negative factor in such consideration." Passonno v. State Univ. of N.Y. at Albany, 889 F. Supp. 602, 607 (N.D.N.Y. 1995) (citations omitted); see also Memnon v. Clifford Chance US, LLP, 667 F. Supp. 2d 334, 340 (S.D.N.Y. 2009) ("To survive summary judgment under this analysis, a plaintiff must adduce sufficient evidence for a reasonable fact finder to conclude that she established her prima facie claim of either

16

discrimination or retaliation."). Hart testified that Aguilar
never spoke of his race or disability at the April 22, 2008
meeting, but rather it was Hart who raised these issues:

> Q.   Did he say anything to you about being black?
> A.   No.  In so many ways I was puzzled why I was
>      getting this way.  And I said, "Why am I getting
>      treated this way?"  I might have said black.  "Is
>      it because I'm black?"
> Q.   But he didn't say it's because you're black?
> A.   No, I asked him.
> Q.   Did he say anything to you about your disability?
> A.   No.

Driesen Aff. Ex. 1 (Dep. of Pl. Tr.), p. 72:13-25.


Plaintiff further speculated that Aguilar was offended because
Hart was taking the same referee classes.  Although Aguilar was
not actually taking the class, Hart believed that Aguilar was
upset because Hart was trying to be a basketball official.  Such
speculation is wholly insufficient to withstand summary
judgment.  Quarles v. Gen. Motors Corp., 758 F.2d 839, 840 (2d
Cir. 1985) (plaintiff may not depend on "mere conjecture or
speculation" to overcome a motion for summary judgment); Meiri
v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985) (conclusory
allegations of discrimination are not enough to evade summary
judgment).

17

Further, Hart has not demonstrated that non-blacks or non-disabled persons were treated in a more favorable manner. See Baguer v. Spanish Broadcasting Sys., Inc., No. 04 Civ. 8393(RJS), 2010 WL 2813632, *12 (S.D.N.Y. July 12, 2010) (court granted summary judgment dismissing discriminatory discharge claims where plaintiff did "not offer any specific evidence of employees outside his protected class being treated more favorably than him on account of his [protected class]"). Aguilar's unrebutted affidavit states that both disabled and non-disabled employees and people of various races have been terminated.

Lastly, Hart's claim of discriminatory intent is undercut by his own testimony.  Plaintiff testified that Aguilar told him at the meeting, "'Your job is here if you want it.' Something to that effect.  'Your job is here.'."  Hart has failed to establish that the legitimate, non-discriminatory explanation proffered by Aguilar was pretextual and that he was motivated by discrimination or retaliation.  See Schanabel v. Abramson, 232 F.3d 83, 88 (2d Cir. 2000); Henwood v. Unisource Worldwide, Inc., 282 Fed. Appx. 26, 28 (2d Cir. 2008). Plaintiff testified as follows:

18

- Hart, not Aguilar, raised the issue of race in the meeting.  56.2 Stmt. ¶ 39;

- Aguilar never said anything about Hart being black.  Id.  ¶ 39;

- Aguilar never discussed Hart's disability.  Id. ¶ 40;

- Hart did not recall saying anything about disability either.  Id.  ¶ 40;

- Hart, not Aguilar spoke of his prior complaint to the NYSDHR.  Id. ¶ 41;

- Hart's NYSDHR claim had already been dismissed for no probable cause at the time of the meeting. Id.  ¶ 43;

- Aguilar stated to Hart that "your job is here if you want it."  Id. ¶ 44.

In fact, Hart's testimony reflects that he had no idea as to why he was allegedly being treated hostilely – "In so many ways I was puzzled why I was getting this way?  And I said, 'Why am I getting treated this way?'  I might have said black.  'Is it because I'm black?'"  Driesen Aff. Ex. 1 (Dep. of Pl. Tr.), p. 72:16-19.  In Cameron v. Community Aid for Retarded Children, Inc., the Second Circuit held that where a decision-maker's

19

remarks or conduct are facially neutral, the court should not
infer discriminatory intent, because '[c]hoosing one explanation
over another without more evidence is a matter of speculation."
335 F.3d 60, 65 (2d Cir. 2003).

        Even if Hart had established a prima facie case of
race or disability discrimination, the Defendant had a
legitimate, non-discriminatory reason for his termination:
Hart, who had an unsatisfactory disciplinary history, threatened
and cursed at the Senior Administrative Director of the
Department when he would not return Plaintiff to work in a
position that was not vacant, for which Plaintiff was not
qualified, and for which he had already been turned down.  As
this Court held in Bethea v. Potter, such insubordination and
threatening behavior is a legitimate non-discriminatory reason
for NYUHC's decision to terminate Plaintiff's employment.  2010
WL 423105, at *9-10; see also, Meiri, 759 F.2d at 997
(plaintiff's usurpation of authority, contravention of
prescribed workplace policies and inability to get along with
her co-workers provided a legitimate nondiscriminatory reason
for her dismissal); Volmar v. Cold Spring Hills Ctr. for Nursing
& Rehabilitation, No. 07-CV-1418 (JS)(ARL), 2009 WL 2984194, at
*4 (E.D.N.Y. Sept. 14, 2009) (granting summary judgment on
discrimination claims noting plaintiff's insubordination as a

                              20

legitimate nondiscriminatory reason for termination); Dorrilus

v. St. Rose's Home, 234 F. Supp. 2d 326, 333 (S.D.N.Y. 2002)

(granting defendant's motion for summary judgment finding that

plaintiff's insubordination along with verbal threats and

abusive language to supervisors was a legitimate

nondiscriminatory reason for the adverse employment action).

Plaintiff has not created a genuine issue of material fact by

putting forth allegations that are contradicted by the

overwhelming weight of the evidence.  See Forde v. Beth Israel

Med. Ctr., 546 F. Supp. 2d 142, 146-47 (S.D.N.Y. 2008);

Ghiradelli v. McAvey Sales & Serv., Inc., 287 F. Supp. 2d 379,

391 (S.D.N.Y. 2003) (plaintiff's self-serving account that

disputes the clear and unequivocal documentary and testimonial

evidence presented by an employer are insufficient to create

genuine issues of material fact to avoid summary judgment).  In

Forde, the court disregarded the allegation by plaintiff that a

meeting did not occur when sworn deposition testimony and seven

affidavits proved that the meeting took place.  546 F. Supp.2d

at 146-47.  Similarly, in this case, the evidence provides

strong support for the fact that Hart was terminated for

legitimate reasons.


Finally, Hart fails to establish that the explanations

Defendant has provided for terminating Hart are a pretext for

discrimination.  As described above, it was Hart, not Aguilar,
who raised the issues of race and disability in their
discussions.  Hart has sought to show pretext by alleging that
he was not insubordinate or threatening.  However, as a matter
of law, his interpretation of his conduct is immaterial.  See
Saenger v. Montefiore Med. Ctr., 706 F. Supp. 2d 494, 509
(S.D.N.Y. 2010) (granting summary judgment dismissing
discriminatory discharge claims, stating "whether the complaints
against Plaintiff were truthful, and whether, if true, they
justify termination, are immaterial disputes"); Duviella v. Jet
Blue Airways, 353 Fed. Appx. 476, 477 (2d Cir. 2009) ("In a
discrimination case, however, we are decidedly not interested in
the truth of the allegations against plaintiff.  We are
interested in what 'motivated the employer.'"); Graham v. Long
Island R.R., 230 F.3d 34, 44 (2d Cir. 2000) (even if plaintiff
could demonstrate that the grounds for his discharge were error,
that showing would not demonstrate that reliance on those
grounds was pretextual).  Courts should not interfere with or
second-guess valid corporate termination decisions.  Alfano v.
Costello, 294 F.3d 365, 377 (2d Cir. 2001) ("federal courts are
not in the business of adjudicating whether employment decisions
are prudent or fair.") (internal citations omitted); Baquer,
2010 WL 2813632, at *6 ("'a fact-finder need not, and indeed
should not, evaluate whether a defendant's stated purpose is

22

unwise or unreasonable").  Here, even if Hart were somehow able
to reach the final step in the burden shifting-analysis, he has
not satisfied his ultimate burden of proving that discrimination
was the real reason for his termination.

          With respect to retaliation, a plaintiff is obligated
to show that (1) he engaged in protected activity; (2) NYUHC was
aware of the protected activity; (3) NYUHC took adverse action
against him; and (4) a causal connection exists between his
protected activity and the adverse action – i.e., that a
retaliatory motive played a part in the termination decision.
Cooney v. Consol. Edison, 220 F. Supp. 2d 241, 248 (S.D.N.Y.
2002).  Hart has not satisfied the second and the fourth
criteria—that NYUHC knew he was engaged in protected activity
and that his termination was motivated by retaliation.

          Hart filed a NYSDHR claim over seven and a half months
before his termination.  This claim was dismissed for no
probable cause more than two months before he was fired.
Plaintiff's filing, in and of itself, is too far attenuated in
time to be evidence of retaliatory discharge on April 22, 2008.
This Court found in Bethea, that pro se plaintiff's EEO filing
four months prior to termination was too long to suggest causal
relationship.  2010 WL 423105, at *12; see also Cunningham v.

Consol. Edison, Inc., No. 03 Civ. 3522(CPS), 2006 WL 842914, at
*19 (E.D.N.Y. Mar. 28, 2006) ("a passage of two months between
the protected activity and the adverse employment action seems
to be the dividing line").  Further, as set forth more fully
above, Hart's request to be transferred to a non-vacant position
for which he was not qualified and which he was denied 14 months
earlier was not a request for a reasonable accommodation and
therefore should not be considered protected activity.  See
Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1328 (11th
Cir. 1998) (to be protected activity plaintiff must demonstrate
that "he had a good faith, objectively reasonable belief" that
he was entitled to the accommodations requested.)  Moreover,
Hart has not established that his inquiry about the night
elevator position was presented as an accommodation request for
his alleged disability:

> Q.   . . . in the conversation that you may have
> had with him, did you or he say anything about
> you being disabled?  A.  I don't recall, Maybe I
> said something.  I don't recall all the way . . .
> .").

Driesen Aff. Ex. 1 (Dep. of Pl. Tr.), pp. 73:21-74:2.

Accordingly, absent Plaintiff proving that the inquiry about the
prior job was known to Defendant as being a reasonable

accommodation request, his prima facie burden cannot be met.

See Jones v. United Parcel Serv., Inc., 502 F.3d 1176, 1194-95

(10th Cir. 2007) (granting summary judgment where the record

contained no evidence that the employer believed the request for

reassignment was presented as a request for a reasonable

accommodation).

        Even if Hart's NYSDHR complaint and request to Aguilar

could be deemed protected activity, his retaliation claim still

must fail because he cannot demonstrate a causal connection

between the complaints and his termination.  See, e.g., Meder v.

City of New York, No. 05 CV 919(JG), 2007 WL 1231626, at *6

(E.D.N.Y. Apr. 27, 2007) (prima facie retaliation case failed

because plaintiff "proffers no admissible evidence linking the

offending actions to any retaliatory animus"); see also

Hollander v. American Cyanamid Co., 895 F.2d 80, 85-86

(retaliation claim fails because there is no evidence "which

would fulfill the final requirement of a casual nexus between

[plaintiff's] filing of the agency complaint . . . [and the

adverse action]").  As noted above, Hart's allegations regarding

Aguilar's motivations were purely speculative.  On the one hand,

Hart alleged that Aguilar reaffirmed to Plaintiff that his job

was there if he wanted it.  On the other hand, he alleged that

Aguilar was the one who got upset and started cursing, but

25

testified that he did not "know for what reason."  Plaintiff
baldly speculated that Aguilar was allegedly upset, "because
maybe when I said the Division of Human Rights part he got
offended."  Driesen Aff. Ex. 1 (Dep. of Pl. Tr.), p. 74:12-15.
He also speculated that Aguilar was upset that Plaintiff was
trying out to be a basketball referee.  Id. at 43:14-45:22.
Moreover, Aguilar's undisputed affidavit testimony indicates
that other employees have complained to the NYSDHR and continued
to be employed in his department.  Accordingly, Plaintiff's
unsupported assertions are insufficient to establish pretext and
overcome Defendant's legitimate non-retaliatory business reasons
for the discharge.  See Auguste, 593 F. Supp. 2d at 665-66;
Bethea, 2010 WL 423105 at *10.  The retaliation claim is
dismissed.

26

Conclusion

       Based upon the facts and conclusions set forth above, the motion of NYUHC for summary judgment dismissing the complaint is granted.

       It is so ordered.

**New York, NY**
**October 7 , 2011**

ROBERT W. SWEET
U.S.D.J.

27